RAYMOND BOOTH and CANDICE BOOTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Booth v. Commissioner
Docket No. 33254-84.
United States Tax Court
T.C. Memo 1986-187; 1986 Tax Ct. Memo LEXIS 422; 51 T.C.M. (CCH) 984; T.C.M. (RIA) 86187; May 6, 1986. *422 Raymond Booth and Candice Booth, pro se. Albert K. Kerkhove, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: By separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income taxes for 1981 and 1982 as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6654
Raymond L. Booth and Candice A. Booth
1981
$5,229.50
$261.48 *
Raymond L. Booth
1982
650.00
$135.00
33.00 **
51.00
Candice A. Booth
1982
5,345.00
1,336.00
276.00 ***
520.00
After concessions, the issues for decision are whether income attributed by respondent to petitioner Candice A. Booth was in fact income of a corporation and whether that income should be reduced by payments made to various individuals. FINDINGS OF *423 FACT Some of the facts have been stipulated, and the stipulation of facts are incorporated herein by this reference. Petitioners were residents of Omaha, Nebraska, at the time they filed their petition herein. They filed a joint Federal income tax return for 1981 but did not file any income tax returns for 1982. During those years petitioner Candice A. Booth (petitioner) operated a bookkeeping business. During 1979, petitioner acquired the stock in a corporation known as Double M Shop, Inc. (the corporation).The corporation elected a fiscal year ending January 31. The corporation did not maintain a separate bank account prior to 1982. During 1981, income received from the business operated by petitioner was deposited into a bank account maintained individually by petitioners. Business expenses, as well as personal expenses, were paid out of that bank account. At the end of 1981, petitioner decided that the income earned by the business during 1981 would be treated as corporate income. She reported that income on a corporate return.During 1982, petitioner opened a separate bank account for the corporation. The corporation did not file a tax return for its fiscal year ended *424 January 31, 1983. During 1982, petitioner operated a tax return preparation service. Petitioner had succeeded her father, Charles Newell, as the operator of that business. In relation to that business, during 1982, petitioner made payments to the following persons: Person
Amount
Karen Lancaster
$ 100.00
Charles Newell
5,689.70
Bud Deats
450.00
Linda Hirsch
20.00
Linda Kowaleski
23.29
Jean Deats
86.00
Linda Nord
36.20
Ralph Deats
150.00
Gene Tompkins
25.00
Total
$6,580.19
OPINION Petitioners bear the burden of proving that the determinations in the statutory notices of deficiency are incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners presented evidence only with respect to their claim that income from the bookkeeping and tax preparation businesses was corporate income and that the above payments made during 1982 constituted deductible business expenses. They presented no evidence as to other matters, including the additions to tax. Thus all other issues not conceded by respondent must be resolved against petitioners. With respect to the business *425 income, petitioner testified as follows: THE WITNESS: The Customers were friends, mostly, to begin with; and, referrals from friends that liked what I did. I had worked for a CPA ahd when I left him, a couple of the clients that the CPA had showed a preference for me. And, they also became my clients. The then, in 1982, my father retired and more or less dumped his whole business in my lap; and, that is when I knew that I needed a separate bank account to keep things separate. * * * THE COURT: Well, was there anything that distinguished what you did in 1981, in fact, with what you would have done if you had, had a Schedule C Proprietorship business? THE WITNESS: No, I don't assume so. Not in '81. Because I was not sure whether I was really going to have a business, or not. But, at the end of the year, I considered it as the corporation money. I claimed it as the corporation money on the proper return. I took all of the expenses, properly, on the corporation return. Petitioner presented no evidence that any customer dealt with the corporation or that the corporation was anything other than a mere nominee to which she unilaterally decided to assign income that *426 she had earned as an individual. The income, therefore, is taxable to her and not to the corporation regardless of whether the corporation is otherwise a separate entity. See, e.g., Saenger v. Commissioner,69 F.2d 631 (5th Cir. 1934). With respect to the payments claimed to be deductible expenses of the business, petitioner testified without contradiction that they were for services performed by the payees on behalf of the business. Respondent's only comment with respect to nondeductibility was that the payments made to Charles Newell might be in exchange for the business rather than payment for services. The evidence of record, however, is sufficient to satisfy petitioner's burden of proof. [2] Petitioners are entitled to deduct the payments totaling $6,580.19. *427 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. * 50 percent of the interest due on $5,229.50 ** 50 percent of the interest due on $540.00 *** 50 percent of the interest due on $5,345.00↩
2. We take judicial notice that the case of Charles F. Newell, docket No. 24219-84, involved his tax liability for 1982 and was set for trial at the same time and place as the within case. Newell's motion to continue his case and to change the place of trial to Las Vegas, Nevada, was endorsed "no objection" by respondent on February 13, 1986, approximately a month before the trial date. Apparently respondent did not believe that Newell's testimony would be helpful to respondent in this case. Petitioner testified that she had not had any contact with Newell for quite awhile, so we do not draw any inferences from her failure to call him.↩